NOTICE

Decision filed 07/17/26. The text of this decision may be changed or corrected prior to the filing of a Petition for Rehearing or the disposition of the same.

2026 IL App (5th) 260139-U

NO. 5-26-0139

IN THE

APPELLATE COURT OF ILLINOIS

FIFTH DISTRICT

NOTICE

This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

| | | |
|---|---|---|
| *In re* RENNESMEE W., a Minor | ) | Appeal from the |
| | ) | Circuit Court of |
| (The People of the State of Illinois, | ) | Madison County. |
| | ) | |
| Petitioner-Appellee, | ) | |
| | ) | |
| v. | ) | No. 25-JA-341 |
| | ) | |
| Lindsey H. and Robert W., | ) | |
| | ) | |
| Respondents | ) | |
| | ) | Honorable |
| (The Department of Children and Family Services, | ) | Janet R. Heflin, |
| Intervenor-Appellant)). | ) | Judge, presiding. |

JUSTICE CLARKE delivered the judgment of the court.
Justices Barberis and McHaney concurred in the judgment.

**ORDER**

¶ 1     *Held*: We affirm the denial of the appellant's motion to reconsider and/or vacate, as the circuit court acted within its statutory authority and its order was not against the manifest weight of the evidence.

¶ 2     The Illinois Department of Children and Family Services (DCFS) appeals the Madison County circuit court's temporary custody order of Rennesmee W., the minor, and contends that the circuit court lacked authority to require DCFS to place the minor in one of two counties, and that its findings were against the manifest weight of the evidence. For the following reasons, we affirm.

1

¶ 3                              I. BACKGROUND

¶ 4     On November 5, 2025, DCFS filed a formal request for the State to file a petition for juvenile court intervention. The request stated that Lindsey H. (Mother) tested positive for amphetamines during her prenatal care, which could have been caused by her prescribed medications. Mother had an open placement case with DCFS due to three other minors being brought into care. Her parental rights to the oldest minor were terminated, she surrendered her rights to the second oldest, and her youngest remained in the care of DCFS with the goal of substitute care pending termination. Mother had a history of addiction and drug use while pregnant with her older children.

¶ 5     The State then filed a petition the same day, alleging that the minor, born November 2, 2025, was in shelter care and was neglected. 705 ILCS 405/2-3(1)(a), (b) (West 2024). The petition stated that Robert W. (Father) and Mother neglected the minor. Specifically, Father failed to provide care, concern, or support, and Mother had substance abuse issues that impaired her ability to care for the minor; she had been indicated several times by DCFS; both parties' parental rights were terminated to one child; and both parties had an open DCFS placement for another child with failure to make sufficient progress on their service plans.

¶ 6     The circuit court held a shelter care hearing on November 6, 2025. The court found probable cause and entered a temporary custody order placing the minor in the care of DCFS. In addition to the temporary custody order, the circuit court entered an order stating, "Upon [guardian *ad litem* (GAL)] recommendation [and] to be most supportive of reunification goal for family, minor is not to be placed outside of Madison [and] St. Clair counties."

¶ 7     On November 20, 2025, DCFS filed a motion to reconsider and/or vacate the placement order for Madison or St. Clair County. DCFS argued that the circuit court lacked the statutory

2

authority to impose the placement restriction, and that DCFS had authority to place the minor. Further, it would be in the minor's best interest to be placed with her siblings, but the court's order barred DCFS from placing her with her siblings in Marion County.

¶ 8    On November 25, 2025, DCFS filed a service plan. The minor was placed in Madison County due to the circuit court's order. The recommended permanency goal was return home within 12 months, but the report also noted that the minor's placement "was not the plan nor intent of DCFS who wanted the case to be transferred to Marion County and for [the minor] to be with her siblings." Mother had visits with the minor twice a week, and the minor was scheduled for sibling visitation with Ryder, her older brother. Mother was making satisfactory progress on some of her services, including substance abuse and visitation.

¶ 9    On January 12, 2026, DCFS filed an adjudication and disposition hearing report. The report stated that the minor was in a traditional foster placement, but DCFS arranged for her to be placed with her siblings and was unable to do so due to the court's order. Visits with Mother and the minor occurred at the DCFS office in Collinsville, Illinois, for two hours twice a week. Mother requested visits to occur at the "Oxford House," a sober living house, and DCFS planned to complete a home check before visits could be arranged. Father did not have any visits with the minor, as the court had not received any documentation to establish that he was the minor's biological father. The minor had sibling visits with Ryder for four hours monthly, which were coordinated by his foster parents. DCFS requested again that the circuit court vacate the order regarding the minor's placement so she could be placed with her three siblings.

¶ 10    On January 14, 2026, the State filed a response to DCFS's motion to reconsider and/or vacate. The State argued that the circuit court did not act outside its authority in ordering placement in Madison or St. Clair County because the court did "not order[ ] a specific placement" for the

3

minor. Further, it was not in the minor's best interest to be placed with her siblings, as the permanency goal was return home in 12 months. The minor's placement order was based on the goal of increasing and maintaining the bond among Mother, Father, and the infant minor, as Mother and Father lived in St. Clair County. Additionally, the minor did not have a relationship with her siblings due to her age. The State asked for the placement order from the court to stand and for the minor to remain placed in Madison or St. Clair County.

¶ 11    On January 22, 2026, the matter proceeded to a hearing, and the adjudicatory and dispositional orders were entered by agreement of the parties. The minor was found neglected due to an injurious environment, and both parents were found unfit for not yet successfully completing all service plan tasks. DCFS then called witnesses in support of its motion to reconsider the circuit court's order restricting the minor's placement. Luke Johnson of Dix, Illinois, testified on his behalf and for his wife, Jeana, as the foster and adoptive parents of the minor's siblings. Ross and Emma were the two oldest siblings and they were adopted by Luke and Jeana. The third child, Ryder, also lived with them as a foster child pending his adoption. All four of the siblings had one visit together, and the minor and Ryder had two additional visits. Luke testified that they were willing and able to foster the minor, even if the permanency goal remains return home. Luke stated that he wished to keep all the siblings together for "as long as possible," and had no motivation to keep the minor from being able to return to Mother.

¶ 12    On examination by the State, Luke stated that he and his wife had been involved with the minor's family for four and a half years, but they had never met Mother. Visits were always facilitated by the DCFS caseworker, and they "never had a need" to meet Mother or Father thus far. Luke lived an hour and 20 minutes away from Edwardsville.

¶ 13    On examination from Mother's counsel, Luke testified that Ross, Emma, and Ryder had not yet formed a bond with the minor due to her age. They would be willing to adopt the minor as well if that was the outcome of the case.

¶ 14    DCFS next called Kent Hollis, the caseworker assigned to the minor and her siblings since August 2024. As to Ryder, Kent testified that Mother and Father had not actively worked on their service plans for approximately a year and Mother had signed an adoption consent form for Ryder in mid-to-late 2025. When the minor was born in November 2025, Mother was not actively engaged in working on her service plan. DCFS originally planned to place the minor with Luke and Jeana so she could be with her siblings. Hollis testified that it was DCFS policy to place siblings together. Mother was originally given two hours of visitation per week, but visits were increased to four hours. Distance between where a minor was placed and where the parent resided does not play a factor in how much visitation a parent receives. Hollis stated that if the minor resided with her siblings, it would not affect visitation with Mother, as DCFS provided transportation for the visits with Mother and the siblings. DCFS previously provided transportation with Ryder and Mother at his placement in Dix, and the agency would again coordinate transportation for visits with the minor and Mother. Ryder and the minor had sibling visitation, and Hollis testified that a bond can be built between siblings when placed together through consistency and support within the placement.

¶ 15    On examination from the State, Hollis stated that he had "infrequent" communication with Mother prior to her moving into the Oxford House. Her services and communication improved since living there. Visits with the minor also occurred at the Oxford House and at the DCFS office in Collinsville. The minor lived 20 minutes from the Oxford House, and she seemed to be doing well and "thriving" in her placement. If the minor moved to the placement with her siblings, she

would be roughly an hour and a half away from the Oxford House. Hollis testified that a DCFS case aide would provide transportation to the Collinsville DCFS office for visits if she moved placements. Hollis stated that Luke and Jeana had not met Mother and Father, but had a "respectful relationship" with them. If the minor were returned to Mother's care, DCFS would be unable to enforce sibling visits due to the completed and pending adoptions of the siblings.

¶ 16    On examination from Mother's counsel, Hollis testified that the minor was doing well and appeared bonded with her foster parents. Hollis stated that if visits continued to go well with Mother, the frequency would increase because Mother was making good progress. Moving the minor into the placement with her siblings would increase the driving time to visits by over an hour, resulting in the minor being in the car for nine hours a week for visits with Mother. Hollis stated that there had previously been a case aide shortage, but as of the hearing, his agency office had two aides and a transportation contractor.

¶ 17    On examination from the GAL, Hollis testified that he was not sure if there were any exceptions to the rule of placing siblings together. Further, the distance between the minor and parents was one factor in the entire picture. Hollis was unsure of what circumstances would require siblings to be placed separately. Hollis did not have any formal training in child development, but believed a bond between a mother and child could be developed through spending time together.

¶ 18    DCFS proceeded to argument, first asserting that the circuit court lacked the "jurisdiction to order specific placement" of the minor. However, DCFS admitted that there was "not case law or statutory rules that specifically address the issue of whether the Court has the power to place a geographical restriction of where a minor can be placed." If the circuit court found, however, that it did have jurisdiction, DCFS argued that the placement restriction was not in the minor's best interest as she had siblings and was able to be placed with them. The State argued that the circuit

court did not order a specific placement for the minor, but rather placed a geographic limitation on placement to support the goal of reunification.

¶ 19    The circuit court denied the motion, finding that it was "more important for the minor to bond with the mother than it is to bond with siblings at this point." The court stated that the placement distance would affect visitation with Mother, and that there was no case law limiting the court's ability to order a geographic restriction on placement.

¶ 20                                    II. ANALYSIS

¶ 21    DCFS appealed the denial of its motion to reconsider and/or vacate the order restricting placement. DCFS argues that the circuit court exceeded its statutory authority to require DCFS to place the minor in one of two counties under the Juvenile Court Act of 1987 (Act) (705 ILCS 405/1-1 *et seq.* (West 2024)). DCFS argues that the order placing the minor apart from her siblings was against the manifest weight of the evidence. The State argues that the circuit court acted within its authority because it did not order a "specific" placement, and it was in the minor's best interests.

¶ 22    The Act sets forth a step-by-step process for deciding whether a child should be removed from his parents and made a ward of the court. *In re Arthur H.*, 212 Ill. 2d 441, 462 (2004). Upon the filing of a petition for wardship by the State, the Act provides that a temporary custody hearing shall be held during which the court shall determine whether there is probable cause to believe that the child is neglected, whether there is an immediate and urgent necessity to remove the child from the home, and whether reasonable efforts have been made to prevent the removal of the child or that no efforts reasonably can be made to prevent or eliminate the necessity of removal. 705 ILCS 405/2-10 (West 2024). If the court finds probable cause, it must hear evidence and determine whether it is consistent with the health, safety, and best interests of the minor that he be released to his parent or placed in a "suitable place designated by the court or in a shelter care facility

7

designated" by DCFS. *Id.* § 2-10(2). The court "may enter such other orders related to the temporary custody as it deems fit and proper." *Id.*

¶ 23 The circuit court is clearly permitted to enter orders related to temporary custody of the minor, but "the power of the court over [DCFS] is not unlimited." (Internal quotation marks omitted.) *In re P.F.*, 265 Ill. App. 3d 1092, 1106 (1994). The court does not have the authority to dictate the *manner* in which DCFS performs a statutory duty. *In re B.S.*, 2021 IL App (5th) 200039, ¶ 35. The circuit court is thus not permitted to enter a specific placement, which can include exactly where a minor is placed or which agency is a minor's caseworker. See *In re R.M.*, 288 Ill. App. 3d 811, 816-17 (1997) (once guardianship is granted to DCFS, the court lacks authority to order placement with a specific party); *In re T.L.C.*, 285 Ill. App. 3d 922, 924-27 (1996) (same); *In re B.S.*, 2021 IL App (5th) 200039, ¶ 36 (the circuit court lacks authority to order DCFS to be the minor's caseworker).

¶ 24 Section 2-10(2) of the Act permits the circuit court to enter orders "related to the temporary custody as it deems fit and proper." 705 ILCS 405/2-10(2) (West 2024).

> "A plain reading of the statute [705 ILCS 405/2-10(2)] indicates that the legislature vested the trial court with authority to make additional orders related to the temporary custody of the minor, even after the trial court awarded the DCFS temporary custodian of the minor. Nowhere in the statute is it evident that the legislature intended that these other orders be unrelated to the temporary custody order itself or that they should be limited to ancillary social services. Courts should not, under the guise of statutory construction, add requirements or impose limitations that are inconsistent with the plain meaning of the statute." *In re Sean A.*, 349 Ill. App. 3d 964, 970 (2004).

Thus, "[i]t is clear that our supreme court has held that a trial court has broad authority at a temporary custody hearing to control the custody of a minor and the services given to him or his parents, even if the DCFS has been granted temporary custody of the minor." *Id.* at 971 (citing *In re A.H.*, 195 Ill. 2d 408, 419-20 (2001)); *In re Lawrence M.*, 172 Ill. 2d 523, 530 (1996).

¶ 25 DCFS asks this court to find that the circuit court exceeded its authority based on a statutory construction analysis and to apply a *de novo* standard of review. However, we do not believe such an analysis is required because the issue is whether the circuit court ordered a *specific* placement of the minor, which is not permissible, or whether it acted within its authority under section 2-10(2) of the Act to enter an order related to the minor's temporary custody as it deemed fit and proper. 705 ILCS 405/2-10(2) (West 2024). The order on appeal was a denial of DCFS's "motion to reconsider and/or vacate." Although titled this way, the motion requested that the circuit court vacate its order rather than reconsider the denial. As such, we will apply an abuse of discretion standard of review, which is applicable to a circuit court's denial of a motion to vacate. *Gellert v. Jackson*, 373 Ill. App. 3d 149, 151 (2007).

¶ 26 On November 6, 2025, the circuit court entered a temporary custody order pursuant to section 2-10 of the Act, finding probable cause that the minor was neglected, and that there was an immediate and urgent necessity to remove the minor from the home. In addition to the temporary custody order, the circuit court entered an order requiring that the minor's placement be in Madison or St. Clair County "to be most supportive of reunification" with her parents. The minor's siblings were located in Dix, Illinois, roughly an hour and a half away from where Mother resided and where Father planned to move. By ordering the minor's placement in Madison or St. Clair County, the circuit court did not order a specific placement for the minor and thus did not dictate how DCFS would perform its duties as the temporary guardian. The circuit court clearly

9

stated on the record that the geographical limitation was intended to further the goal of reunification, which it deemed fit and proper for the minor's temporary custody. DCFS was still permitted to select a placement for the minor that it deemed appropriate, and the only limitation was on the location of the placement.

¶ 27 Thus, the circuit court did not substitute its discretion for that of DCFS (*In re K.C.*, 325 Ill. App. 3d 771, 779 (2001)). Further, DCFS conceded during the motion to vacate hearing that there were no cases or statutory provisions addressing the circuit court's power to enter an order regarding the minor's geographical restriction. Based upon the goal of reunification and the need to further bonding with the minor and Mother, we do not find that the circuit court abused its discretion in denying DCFS's motion to vacate the November 6, 2025, order.

¶ 28 DCFS also argues that the circuit court's order, which required DCFS to place the minor separately from her siblings, was against the manifest weight of the evidence. DCFS asserts that the statutory framework governing sibling placements required the minor to be with her siblings. All of the statutes provided by DCFS, however, detail the rules and limitations imposed on DCFS, not the circuit court, regarding placements.

¶ 29 In placing the minor, DCFS must, "to the *extent compatible with the court's order*, comply with Section 7 of the Children and Family Services Act [(20 ILCS 505/7 (West 2024))]." (Emphasis added.) 705 ILCS 405/2-10(2) (West 2024). Section 7 of the Children and Family Services Act is titled, "Placement of children; considerations." This act states, "In placing a child under this Act, [*DCFS*] shall place the child with the child's sibling or siblings ***." (Emphasis added.) 20 ILCS 505/7(a-5) (West 2024). The Kinship in Demand Act also required that DCFS "shall make diligent efforts to place a child with a relative." Pub. Act 103-1061, § 2 (eff. Feb. 5, 2025).

¶ 30 Statutes and policies of DCFS do require DCFS to prioritize placing siblings together whenever possible. This limitation, however, must be complied with to the extent compatible with the circuit court's order. 705 ILCS 405/2-10(2) (West 2024). DCFS does not provide any statutory authority that places DCFS's obligations on the circuit court. The circuit court thus acted within its statutory authority to enter an order related to the temporary custody of the minor as it deemed fit and proper. *Id.*

¶ 31 DCFS also argues that the circuit court's order was not in the minor's best interest. When the circuit court enters an order "related to the temporary custody as it deems fit and proper" (*id.*), "the court need only engage in the best interests determination as outlined in section 1-3(4.05) of the Act (705 ILCS 405/1-3(4.05) (West 1998))." *In re A.H.*, 195 Ill. 2d at 422. The circuit court is not required to explicitly mention the statutory best interest factors when rendering a decision. *In re Jaron Z.*, 348 Ill. App. 3d 239, 262-63 (2004). The best interest factors are as follows:

> "(a) the physical safety and welfare of the child, including food, shelter, health, and clothing;
> (b) the development of the child's identity;
> (c) the child's background and ties, including familial, cultural, and religious;
> (d) the child's sense of attachments, including:
> (i) where the child actually feels love, attachment, and a sense of being valued (as opposed to where adults believe the child should feel such love, attachment, and a sense of being valued);
> (ii) the child's sense of security;
> (iii) the child's sense of familiarity;
> (iv) continuity of affection for the child;
> (v) the least disruptive placement alternative for the child;
> (e) the child's wishes and long-term goals, including the child's wishes regarding available permanency options and the child's wishes regarding maintaining connections with parents, siblings, and other relatives;
> (f) the child's community ties, including church, school, and friends;
> (g) the child's need for permanence which includes the child's need for stability and continuity of relationships with parent figures, siblings, and other relatives;
> (h) the uniqueness of every family and child;
> (i) the risks attendant to entering and being in substitute care; and

11

(j) the preferences of the persons available to care for the child, including willingness to provide permanency to the child, either through subsidized guardianship or through adoption." 705 ILCS 405/1-3(4.05) (West 2024).

¶ 32 The minor was an infant, so many factors are not applicable in this case. However, several factors favor the minor's placement in Madison or St. Clair County. The placement DCFS selected for the minor was able to provide for her physical safety and welfare, including food, shelter, and clothing. *Id.* § 1-3(4.05)(a). The minor's background and ties included her familial tie to Mother, and her placement in Madison County allowed the minor to be closer to Mother and to further their bond. *Id.* § 1-3(4.05)(b). The minor's ability to develop a sense of security, familiarity, and attachment with Mother depends upon her ability to visit and bond with Mother. *Id.* § 1-3(4.05)(d)(i)-(iii). As to the uniqueness of every family and child, the court acknowledged the unique circumstances of this case and found that the geographical restriction was necessary to further the goal of reunification, which favors Mother. *Id.* § 1-3(4.05)(h). The circuit court's order placing a geographical restriction on the minor's placement was in the minor's best interest and worked toward the permanency goal set in this case. As such, it was not against the manifest weight of the evidence.

¶ 33                                                              III. CONCLUSION

¶ 34 For the foregoing reasons, we affirm the denial of DCFS's motion to reconsider and/or vacate.

¶ 35 Affirmed.